IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JAMES H. GOSSARD,              :

    Plaintiff,                :

vs.                            :      CA 14-0395-C

CAROLYN W. COLVIN,             :
Acting Commissioner of Social Security,
                               :
    Defendant.

# MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 19 & 20 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, and the Commissioner's brief, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 19 & 20 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of (Continued)

Plaintiff alleges disability due to diabetes mellitus, obesity, personality disorder, hypertension, hyperlipidemia, acute low back pain, bilateral degenerative arthritis of the hips, and degenerative disc disease of the lumbar spine. The Administrative Law Judge (ALJ) made the following relevant findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since August 18, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairment: diabetes mellitus and obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> The claimant's medically determinable mental impairments of personality disorder[] and substance addiction disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore not severe impairments.
>
> On October 17, 2011, Dr. Kenneth R. Starkey evaluated the claimant at the request of the Social Security Administration. The claimant reported his problem was "not being able to concentrate." He said he loses his vision, he thought due to his diabetes. He reported these intermittent problems with concentration and visual acuity problems since October 2010 with gradual worsening. He described vague problems with sleep and stress that was due to tax and bankruptcy problems but not requiring formal psychiatric treatment. He had a history of alcohol and marijuana dependence prior to 1996 and what appeared to be a pervasive and persisting pattern of grandiosity and disregard for/violation of the rights of others. He can fee[d], bathe, groom and dress himself without assistance. He can use a phone, count money, prepare meals, shop for groceries and drive an auto without assistance. He completed the 12th grade in school, attending regular classes. He receives 10% service-connected disability compensation for hypertension. On exam, he was able to focus and sustain attention without distraction from extraneous stimuli. Estimated intellectual functioning was in the Average range. His memory functions were intact. His mood was generally euthymic and his affect was congruent with this mood. His insight and judgment appeared

---

appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

generally adequate. During the day, he washes the dishes, takes out the trash, feeds his rooster and 2 cats, checks his blood sugar and prepares his food. He works on the computer, vacuums, does the laundry, plays the guitar, watches television, reads, goes to the grocery store and drugstore and attends church three days a week. The impressions were alcohol dependence—full remission per claimant; cannabis dependence—full remission per claimant; personality disorder, nos—narcissistic and antisocial traits; chronic leg pain; hypertension; diabetes mellitus and hypercholesterolemia with a GAF of 68, indicating some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. Dr. Starkey stated that the claimant's ability to understand, remember and carry out simple/concrete instructions appeared [well] from a psychological perspective. His ability to work independently as opposed with close supervision also appeared good. His ability to work with supervisors, co-workers and the general public appeared adequate. His ability to deal with work pressures also appeared adequate at the present time. The medical evidence of record provided by the State agency was review[ed] and the findings were considered in the overall assessment.

On May 9, 2012, records from VA Biloxi show in Exhibit 6F, page 14 through 16, the claimant was psychiatrically evaluated. He reported being incarcerated several times, presumably as a result of behavioral disturbance but did not wish to talk about the reasons for incarceration. He admitted to a long history of being irritable. On Mental Status Exam, his affect was anxious and his mood was described as "stressed." His thought process was often tangential. His speech was of normal volume but modestly pressured and quite difficult to interrupt. There was no evidence of psychosis.

On January 29, 2013, Mobile Veterans Administration personnel said the claimant reported experiencing increasing mood fluctuations and irritability, which he attributed to "stress." On the mental status exam, he was alert and oriented times 4. There was no involuntary movement noted. Eye contact was good. Affect was anxious and he described his mood as "stressed." Thought process was goal-directed and speech was of normal rate and volume. There was no evidence of psychosis. Acute risk of suicidal behavior was considered low. He had not taken mood-stabilizing medication for an extended period of time. He was willing to try topiramate.

As for the opinion evidence, more weight is given to Dr. Starkey whose opinions are consistent with his objective findings and with the claimant's activities of daily living. Dr. Starkey found only mild symptoms or mild difficulty. This is consistent with his finding that the claimant was able to focus and sustain attention without distraction from outside stimuli. His mood was euthymic and his affect congruent with his mood. Insight and

judgment were adequate. The claimant's four broad functional areas were no more than mild. The VA records showed a diagnosis of bipolar disorder. However, there is little evidence that he actually has bipolar disorder, which consists of a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndrome. VA records show the claimant's mood was as he described it. Furthermore, the claimant was not taking any medication at these visits. Although the claimant reported not getting along with others, his activities of daily living do not indicate that he has more than minimal mental limitations. He attends church 2-3 times per week, goes grocery shopping, reads, pays his own bills, writes pen pals, and engages in religious studies.

In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments. These four broad functional areas are known as the "paragraph B" criteria.

The first functional area is activities of daily living. In this area, the claimant has no limitation. He mows the grass and uses a wheelbarrow to clean up yard debris. He prepares meals, cleans house, washes dishes, does the laundry, and enjoys reading and engaging in religious studies. He cares for his rooster and his uncle's disabled son.

The next functional area is social functioning. In this area, the claimant has mild limitation. The claimant stated that he does not like being around others. However, he goes grocery shopping and attends church 2-3 times per week. He also corresponds with pen pals. He attends college classes.

The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation. The claimant stated that he enjoys reading and religious studies. He is also capable of paying his own bills. He attends college classes and is a full-time student making A's and B's.

The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation, which have been of extended duration. There is no indication in the record that the claimant has ever had any such episodes.

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are not severe.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in

4

paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments. Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

. . .

**5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except lifting more than 50 pounds occasionally or more than 25 pounds frequently. During an 8-hour workday, he can stand and/or walk approximately 6 hours and sit for approximately 6 hours. He can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. He should avoid all exposure to workplace hazards, such as unprotected machinery and unprotected heights. His work should be limited to simple routine repetitive tasks involving simple work related decisions with few workplace changes. He can have occasional interaction with the public and with co-workers.**

. . .

The claimant testified that he graduated from high school and attends Bishop State in the computer program. He began his current schooling in 2011 and has less than one year to finish. He will then be trained to repair computers. He stands 5'9" tall and weighs 289 pounds. He draws $129.00 per month from the Veterans Administration (VA) for his pension. He also gets $585.00 a month from VA to go to school. He was in the National Guard for 12½ years as a Unit Tech Supply Sargent. He last work[ed] in air-conditioner maintenance for a few months. He has not worked since 2010. However, he has looked for work but has been unable to find work. He lives in a trailer rent fr[ee] and helps his pastor with raking leaves and gathering eggs. He uses a wheelbarrow to move leaves at home. He attends school 5 days a week. His classes are just over an hour. He works in lab after classes and stays until 3 working on computers. He is a full-time student. He has a driver's license and does drive. He takes oral medication for his diabetes but overeats due to stress. He has some medication that controls his high blood pressure. He had gallbladder surgery within the past year. He sees a psychologist. He is actively involved in the church and denied using drugs or alcohol since the 1980s. He has two grown children who live out of state. He stated that he cannot work now due to hip and leg problems. He gets dizzy when he stands.

Sitting causes problems and he has to change positions frequently. He also reported difficulty sleeping. He takes a lot of medicine. His current grades are A's and B's. His medication side effects are dizziness, anger and overeating. His highest weight was 315 pounds. During the day, he does household chores and helps his landlord by raking some leaves and caring for his chickens. He rests in between doing his chores. He does his chores 1 to 2 times per week for 30 minutes at a time. He takes the bus to go for treatment at VA. In school, he has 2 teachers and [] 2 classes. He goes to the learning center for several hours to do his assignments.

On August 24, 2011, the claimant completed a Function Report—Adult. The claimant stated that he cooked, cleaned, ran his family members to work and doctor's appointments. He does the laundry, prepares meals and cleans the kitchen. The claimant cares for his rooster, two cats and his uncle's disabled son. He said he has difficulty sleeping at night and lies awake most of the night. He has no difficulties with his own personal care and hygiene. He prepares his meals and snacks. This takes him about 20 minutes. He said he could not stand for long periods. He cleans the house, does the laundry, mows the yard and does other yard clean up. He goes outside daily. He shops for food and household supplies about 2-3 times per week. He is able to pay bills and cunt change. He enjoys reading, writing pen pals, and religious studies. He does these things fairly well. He related that he could not stand or write for long periods. He said he attends church twice a week. He goes to church and the library on a regular basis. He does not need to be reminded to take medication or go places. He does need someone to accompany him. He reported getting mad easily. He does not like to be around people for long periods. He can walk about 1 mile before he has to stop and rest and would need to rest about 30 minutes before resuming walking. He reported getting along very poorly with authority figures. He has been fired or laid off from a job because he has a criminal record.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

.   .   .

Progress notes from VA Biloxi cover [the] period from January 5, 2010 to May 18, 2012. On April 12, 2012, the claimant reported he was diagnosed with Type 2 diabetes mellitus in 1982. He has never been on insulin. He insisted he was doing "really well now." He also had hypertension, hyperlipidemia and chronic obesity. His blood pressure was 157/82. His weight was 291 and height 69". There was only mild tenderness of the back with limitation of range of motion. The extremities had no gross changes. The assessments were acute low back strain, Type 2 diabetes

6

mellitus, hypertension, hyperlipidemia, morbid obesity, chronic hip and knee pain due to obesity and apparent left hydrocele. The diagnoses were bipolar disorder, nos (provisional diagnosis); eating disorder (binge eating); morbid obesity; Type II diabetes mellitus and hypertension. He was not taking any medications. He was offered topiramate for possible benefit with weight loss and mood stability but refused. He was also offered referral for psychotherapy but declined this as well.

On June 28, 2012, Mobile Veterans Administration personnel reported the claimant's A1c was 7.1. On August 1, 2012, visual acuity corrected was 20/20 in the right eye and 20/20 in the left eye. On August 10, 2012, the claimant reported he was "doing fine and stress is a little better." On August 23, 2012, he was seen with complaints of loose stools, pain in the legs and hips and dizziness. His blood pressure was 130/80. He rated his pain [as] 5 on a 4-6 scale. He reported pain with weight bearing activities and stress and that rest alleviated the pain. His assessments were subacute low back strain with minimal findings; Type 2 diabetes mellitus under poor control; fecal urgency, hypertension, hyperlipidemia, morbid obesity, chronic hip and knee pain and apparent left hydrocele. The doctor wanted to put him on insulin but he refused, saying he was going to lose 50 pounds before his next visit. His hypertension was doing well on Atenolol 50/chlorthalidone and Valsartan. His hyperlipidemia was doing well on current therapy. His hip and knee pain was due to obesity. He had no current symptoms of hydrocele. On November 16, 2012, the claimant reported back pain mostly in the left thoracic back near inferior tip of the left scapula. Radiological report impression was flowing osteophyte formation, consistent with DISH. There was mild anterior wedge deformity of T11 and correlation with a bone density study [being] recommended. X-rays of the hips revealed mild bilateral degenerative arthritis in the hips. X-rays of the lumbar spine revealed degenerative disc disease and degenerative facet disease . . . .

The claimant testified that he could not work due to hip and leg problems. However, his activities of daily living do not reflect that he has any disabling functional limitations that would preclude the claimant from all work. He testified that he mows the lawn, rakes and uses a wheelbarrow. He does laundry, prepares his own meals, washes the dishes, cleans the house, shops for groceries and household supplies 2-3 times per week[,] [a]ttends church 2-3 times per week and goes to the library on a regular basis. Furthermore, the claimant is a full-time student in college and attends regular classes and labs. He has no difficulties taking care of his own personal hygiene. Moreover, the medical evidence does not reflect such limitations that would preclude the claimant from perform[ing] a range of medium work, as described in the beginning of this finding. He does have Type 2 diabetes mellitus; however, this appears to be controlled with medication. He reported back pain. However, VA records showed only mild tenderness of the back. The assessment was subacute low back strain with minimal findings. X-rays of the hips revealed only mild bilateral degenerative arthritis in the hips. There was mention [of]

degenerative disc disease of the lumbar spine but there was [] no medical source statement indicating what functional limitations the claimant had and[,] as stated earlier, his activities of daily living do not reflect disabling functional limitations[] whatsoever. Therefore, the claimant's medical records simply fail to show that he would be precluded from perform[ing] a range of medium work as previous[ly] described.

**6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

. . .

**7.    The claimant was born on March 12, 1952 and was 58 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

. . .

If the claimant had the residual functional capacity to perform the full range of medium work, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.15. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled medium occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as industrial cleaner, medium, unskilled SVP 2, DOT #381.687-014, with 214,000 in existence in the national economy and 2,100 in the state of Alabama; production assembler, light, unskilled SVP 2, DOT #706.687-010 with 488,000 jobs in existence in the national economy and 7,300 in the state of Alabama; surveillance monitor, sedentary, unskilled SVP 2, DOT #379.367-010, with 102,000 jobs in existence in the national economy and

>868 in the state of Alabama; kitchen helper, DOT #318.687-010, medium unskilled SVP 2, with 419,000 jobs in existence in the national economy and 2,300 in the state of Alabama; laundry worker, DOT #361.684-014, with 150,000 jobs in existence in the national economy, and 1,800 in the state of Alabama.
>
>Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
>Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.
>
>**11.  The claimant has not been under a disability, as defined in the Social Security Act, from August 18, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 25-28, 28, 29-30, 30, 30-31, 31 & 32-33 (internal citations omitted; emphasis in original; footnote added).)  The Appeals Council affirmed the ALJ's decision (Tr. 1-4) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work.  *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  *Id.* at 1005. An ALJ, in turn,

>uses a five-step sequential evaluation to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and

9

(5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Soc. Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f)); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted).

If a plaintiff proves that he cannot do his past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Id.* at 1237 & 1239; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform those medium (light and sedentary) jobs[3] identified by the vocational expert ("VE"), is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's]

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

[3] The focus of this Court will not deviate from the ALJ's medium work RFC determination and the medium jobs identified by the VE inasmuch as it appears that had the determination been made that the advanced-age plaintiff could only perform "light" or "sedentary" work, he would have been found to be disabled under the grids.

decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Gossard offers three reasons why the Commissioner's decision to deny him disability insurance benefits and supplemental security income is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ erred in finding he does not suffer from the severe impairment of personality disorder; (2) the ALJ erred in failing to fulfill his duty to develop the record by ordering a consultative orthopedic examination; and (3) the ALJ's residual functional capacity determination at the fifth step of the sequential evaluation process is not supported by substantial evidence. In this instance, the undersigned need not consider plaintiff's first assignment of error inasmuch as it is clear that the ALJ's RFC determination is not supported by substantial evidence and that the ALJ should have ordered a consultative examination of the plaintiff.[5]

---

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

[5] The Court also parenthetically notes that it is impossible to understand the ALJ's failure to identify the severe impairments of degenerative disk and facet disease of the lumbar spine, mild bilateral degenerative arthritis of the hips, and flowing osteophyte formation consistent with DISH of the T-spine with mild anterior wedge deformity of T11. (*Compare* Tr. 414-416 *with* Tr. 25.)

11

Initially, the Court notes that the responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. §§ 404.1546(c) & 416.946(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins, supra,* 457 Fed. Appx. at 870 n.5 (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)).   Here, the ALJ determined Gossard's physical RFC as follows: "**After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except lifting more than 50 pounds occasionally or more than 25 pounds frequently. During an 8-hour workday, he can stand and/or walk approximately 6 hours and sit for approximately 6 hours. He can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. He should avoid all**

**exposure to workplace hazards, such as unprotected machinery and unprotected heights.**" (Tr. 28 (emphasis in original).)

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D.Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd*, 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013)[6]; *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[7]

---

[6] In affirming the ALJ, the Eleventh Circuit rejected Packer's substantial evidence argument, noting, she "failed to establish that her RFC assessment was not supported by substantial evidence[]" in light of the ALJ's consideration of her credibility and the medical evidence. *Id.* at 892.

[7] It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna*, 395 Fed. App'x at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ *could have* relied . . . . (Continued)

13

In this case, the undersigned cannot find that the ALJ has provided the required "linkage" between the record evidence and his "physical" RFC determination necessary to facilitate this Court's meaningful review of his decision. To be sure, the ALJ made much of plaintiff's testimony at the administrative hearing and comments in the disability reports regarding his daily activities (*compare* Tr. 29 *with* Tr. 30-31) in an attempt to establish that plaintiff can perform the physical requirements of medium work; however, nothing about that evidence provides a firm basis that plaintiff has the ability to perform the physical requirements of medium work, particularly considering that the ALJ "glossed" over or totally ignored plaintiff's clear hearing testimony that he raked leaves and pushed a wheelbarrow of leaves around the property on which he lived rent-free for about 30 minutes only once or twice a week (Tr. 55-56), that he often stops to rest while performing household duties in the small trailer in which he lives (Tr. 55), and his consistent reports and testimony that he cannot stand for lengthy periods (*compare* Tr. 45, 47 & 52 *with* Tr. 170). In ultimately determining plaintiff can perform the requirements of medium work, the ALJ focused solely on certain comments to make it appear that Gossard is capable of performing much more in the way of physical activity than that actually testified to by him (or reported by him). (*See* Tr. 30-31.) When plaintiff's reporting/testimony of his daily activities is understood in proper

---

There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

14

context,[8] there is simply no basis to find that plaintiff can perform the lifting (and carrying[9]) requirements of medium work or the prolonged standing requirement of medium work, *see* SSR 83-10 ("In most medium jobs, being on one's feet for most of the workday is critical."). Plaintiff's testimony/reports regarding his daily activities sheds very little, if any, light on his ability to lift and carry weight and certainly does not provide substantial evidence for the determination that plaintiff can frequently lift and carry 25 pounds. This is not only because plaintiff offered no estimate on the weight he can lift and carry but also because plaintiff continuously "qualified" his testimony regarding the daily activities he performed (like mowing, household chores, raking leaves and pushing a wheelbarrow) with comments that he could not perform those activities continuously and, instead, had to take frequent rests because of his inability to stand for long periods. And there is absolutely no evidence in the record that plaintiff

---

[8] Although the ALJ made the cryptic and canned statement that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (Tr. 30), he nowhere identifies any specific and adequate reasons for questioning plaintiff's testimony that he cannot stand for prolonged periods or that he must often rest when performing certain activities (such as household chores, mowing, raking leaves, etc.) because of the inability to stand for long periods (*see* Tr. 30-31). Accordingly, the undersigned must accept plaintiff's testimony in this regard as true, *see Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) ("Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true."), and the truth of such testimony simply cannot be reconciled with the ability to perform the requirements of medium work.

[9] The undersigned finds interesting that the ALJ failed to make mention in his RFC determination of the claimant's ability to "carry" weight. (*See* Tr. 28 ("[T]**he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except lifting more than 50 pounds occasionally or more than 25 pounds frequently."**).) Even if the undersigned was to consider this failure harmless in light of the hypothetical posed to the VE at the hearing and the VE's response (*see* Tr. 61-62), what this Court cannot ignore is the lack of any evidence in the record that plaintiff can frequently lift and carry 25 pounds and occasionally lift 50 pounds. Plaintiff's "wheelbarrow" testimony simply does not "ring the bell" in this regard, given that there is to nothing suggest that pushing a wheelbarrow of unidentified weight for 30 minutes (with rests) for one to two times a week "equates" to the ability to frequently lift and carry 25 pounds or occasionally lift 50 pounds.

can perform the prolonged standing required of medium work,[10] in light of plaintiff's qualifying testimony regarding certain daily activities (e.g., raking and wheelbarrow usage, household chores, etc.) and his clear testimony that his "activities" as a full-time student are sedentary in nature (*see* Tr. 66 ("I don't stand up going to school, I'm sitting down all the time."))[11]

Any attempt by the Commissioner to now rely on the physical residual functional capacity assessment completed by non-examiner Dr. E. Russell March, Jr. (*see* Tr. 241-248) to supply substantial support for the ALJ's RFC determination[12] would be unavailing for several reasons. First, the ALJ makes no mention of this RFC assessment in his decision and, therefore, any reliance by the Court on this assessment would be improper because it would require the undersigned to engage in a reweighing of the evidence. *Compare Davison, supra*, 370 Fed. Appx. at 996 (courts are precluding from "deciding the facts anew or re-weighing the evidence.") *with Durham, supra,* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ *could have* relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the

---

[10] The undersigned would note that the medium jobs identified by the VE in response to the ALJ's hypothetical undoubtedly require prolonged standing inasmuch as the ALJ stressed in his hypothetical question that the hypothetical individual would be capable of 6 hours of standing during an 8-hour workday and made no mention of walking (*compare* Tr. 61 *with* Tr. 62).

[11] In addition, attending church 2-3 times weekly and going to the library weekly does not in any manner suggest that plaintiff can perform the requirements of medium work; sedentary (or light) work, perhaps, but not medium work.

[12] Indeed, but for the ALJ making no mention of the non-examiner's RFC assessment (*see* Tr. 23-33), this assessment dovetails with that of the ALJ with respect to the lifting and carrying, standing, walking, and sitting requirements of medium work (*compare* Tr. 28 *with* Tr. 242).

court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)). In addition, this non-examining RFC assessment was completed on October 3, 2011 (Tr. 248)—and makes clear that it is based on plaintiff's diabetes, hypertension, morbid obesity, dermatitis, and tinea versicolor (Tr. 242)—more than one year prior to x-ray films showing flowing osteophyte formation consistent with DISH of the T-spine, mild anterior wedge deformity of T11 (Tr. 414), mild bilateral degenerative arthritis in the hips (Tr. 415), and degenerative disk and facet disease of the lumbar spine (Tr. 416). It would be rank speculation for this Court to conclude that these x-ray findings would have had no impact on Dr. March's RFC assessment made over a year earlier.[13]

Because substantial evidence of record does not support the Commissioner's determination that Gossard can perform the physical requirements of medium work as identified by the ALJ (*see* Tr. 28), the Commissioner's fifth-step determination is due to be reversed and remanded for further proceedings not inconsistent with this decision.

---

[13] In his decision, the ALJ does make mention of these x-ray findings (Tr. 30 & 31) but ultimately appears to dismiss them based upon his observation that "no medical source statement [was produced by the VA] indicating what functional limitations the claimant had[.]" (Tr. 31.) The problems with this comment, however, are that it appears to contain a backhanded admission that the x-ray findings (at least those of the lumbar spine) would support functional limitations and, moreover, "begs" whether the ALJ should have obtained the services of an orthopedist (or other specialist) to evaluate plaintiff, particularly in light of the comment on the T-spine report that "correlation with a bone density study is recommended[]" (Tr. 414). *See Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1269 (11th Cir. 2007) ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."). Given the undersigned's earlier analysis with respect to plaintiff's "daily activities" and the just-mentioned comment by the ALJ, the undersigned finds that this case represents the rare one in which a consultative examination by an orthopedist (or other physician) was required in order for the ALJ to make an informed decision. *See id.*

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 29th day of May, 2015.

> s/WILLIAM E. CASSADY
> **UNITED STATES MAGISTRATE JUDGE**